UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EUGENE F. MASON, JR.,

                Plaintiff,

       v.

RICHARD S. MEISNER, ESQ., individually, RICHARD
A. CATALINA, JR., ESQ., individually, and JARDIM
MEISNER SALMON SPRAGUE & SUSSER, P.C.,

                Defendants.
------------------------------------------------------------------------X

Case No.: 1-24-cv-02810-AT

**VERIFIED**
**AMENDED COMPLAINT**

COMES NOW EUGENE F. MASON, JR. (hereinafter, the "Plaintiff" or "Mason"), by and through his attorneys, THE LAW OFFICES OF NEAL BRICKMAN, P.C., 420 Lexington Ave., Ste. 2811, New York, New York 10170 complaining of the above-named defendants, alleges as follows:

### NATURE OF THE ACITON

This is an action seeking to recover damages of no less than $3,000,000 arising from the legal malpractice committed by the law firm JARDIM MEISNER SALMON SPRAUGE & SUSSER, P.C. (hereinafter "Jardim Meisner") and specifically by individual attorneys RICHARD S. MEISNER (hereinafter "Meisner") and RICHARD A. CATALINA JR. (hereinafter "Catalina") arising from Defendants' failure to competently and diligently represent Mason, plaintiff in an action commenced September 9, 2019 in the United States District Court for the Southern District of New York, Index No. 1:19-cv-08364 (DLC) (the "Underlying Action"). As a result of Defendants' repeatedly demonstrated lack of competence and diligence, the Underlying Action was dismissed following a series of motions filed by the defendant in the Underlying Action.[1]

---

[1] Defendants' incompetence in handling the Underlying Action showed on multiple fronts and included *inter alia*, deficient pleadings, the inability to effectively conduct and defend against motion practice, and most significantly the inability to marshal evidence, conduct discovery or appropriately engage and deploy expert witnesses. (i.e. no party or fact witness were deposed, Mason's expert witness was precluded).

## THE PARTIES

1. Plaintiff is an individual domiciled in the State of Connecticut, County of Fairfield.

2. Upon information and belief, defendant, Meisner, is an individual domiciled in the State of New Jersey.

3. Upon information and belief, defendant, Catalina, is an individual domiciled in the State of New Jersey.

4. Upon information and belief, defendant, Jardim Meisner is a foreign professional service corporation, having a principal place of business at 30B Vreeland Road, Suite 100, Florham Park, New Jersey 07932.

5. Upon information and belief at all relevant times, Meisner is an attorney licensed to practice law in the State of New York, is a founder, shareholder, and member of Meisner Jardin, and has maintained an office for the practice of law in New York County at 420 Lexington Avenue, Suite 300-19, New York, New York 10170.

6. Upon information and belief, at all relevant times, Meisner was acting within the scope of his duties as an attorney at Jardim Meisner.

7. Upon information and belief, at all relevant times, Catalina is an attorney licensed to practice law in the State of New Jersey and is a member of Jardim Meisner.

8. Upon information and belief, at all relevant times, Catalina was acting within the scope of his duties as an attorney at Jardim Meisner.

9. Upon information and belief, at all relevant times, Meisner has held, and continues to hold himself out to the general public, as a capable, competent, and experienced business law attorney with an emphasis on executive compensation.

10. Upon information and belief, at all relevant times, Catalina has held, and continues to hold himself out to the general public, as a capable, competent, and experienced intellectual property attorney.

11. Upon information and belief, at all relevant times, Jardim Meisner has held, and continues to hold themselves out to the general public, as capable, competent, and experienced employment law attorneys with an emphasis on wrongful termination, employment agreements and severance packages, intellectual property litigation, and business and corporate litigation.

12. Hereinafter, Meisner, Catalina, and Jardim Meisner are collectively referred to as the "Defendants."

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction of the action pursuant to 28 U.S.C. § 1332 because it is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

14. Defendants conduct systematic and continuous business within the State, County and City of New York.

15. Venue is proper as Defendants have offices and/or regularly conduct business in the State, County and City of New York.

16. The causes of action arose in New York County.

## FACTUAL BACKGROUND

17. Mason knew Meisner as an employment attorney.

18. Meisner represented to Mason that his partner at Jardim Meisner, Catalina, was an experienced intellectual property lawyer and that Defendants would take on Mason's case.

19. Defendants held themselves out to be competent litigation attorneys capable of representing Mason as the plaintiff in the Underlying Action which sought to assert claims for breach of an employment contract and for misappropriation of trade secrets against Mason's former employer and Mason's former supervisor.

20. On or about August 21, 2019, Mason retained Defendants' services to represent him in connection with a misappropriation of trade secrets and breach of contract action, which is described in greater detail hereinbelow. The misappropriation claim concerned Mason's Proprietary Pricing Tool, the working dynamics of which Mason explained to Meisner and Catalina.

21. On September 9, 2019, Defendants commenced suit and simultaneously with the filing of the complaint in the Underlying Action, Meisner filed a motion for a preliminary injunction, seeking to enjoin David Lewis and AmTrust Financial Services, Inc. ("AmTrust") – the defendants in the Underlying Action – from using, disclosing, or distributing Mason's Proprietary Pricing Tool.

22. Defendants ineffectively represented Mason against AmTrust as demonstrated through Defendants repeated incompetence and lack of diligence in their handling of the Underlying Action.

23. Defendants incompetent representation of Mason in the Underlying Action and lack of diligence was shown through a repeated series of missteps and mistakes including but not limited to: 1) the deficient drafting of the Complaint and Amended Complaint; 2) the failure to appropriately manage the discovery process; 3) the failure to adhere to and comply with the Pretrial Scheduling Order; 4) the failure to marshal evidence in support of Mason's claims; 5) the failure to produce documents in discovery provided to Defendants by Mason; 6) the failure to obtain

meaningful documentary evidence from AmTrust and failing to timely compel discovery from AmTrust; 7) the failure to depose any AmTrust witness, including AmTrust's designated expert witness; 8) the failure to depose non-party fact witness identified by Mason; 9) the inability to identify and/or effectively deploy expert witnesses including Mason's retained expert who was precluded from testifying due to Defendants conduct; 10) the inability to conduct and/or defendant against motion practice and 11) ineffective appellate practice.

24. As a result of the Defendants failures and ineffective representation The Underlying Action was dismissed following a series of motions filed by counsel for AmTrust, with dismissal was later affirmed following an unsuccessful appeal filed by Defendants.

### A Timeline of Events and The Procedural History of the Underlying Action

25. On September 9, 2019, Defendants commenced suit in the Underlying Action and filed a motion for a preliminary injunction, seeking to enjoin AmTrust from using, disclosing, or distributing Mason's Proprietary Pricing Tool.

26. On or about October 2, 2019, the defendants filed a motion to dismiss Mason's complaint in lieu of an answer.

27. On or about October 3, 2019, the pre-motion conference was held, at which Meisner declined to oppose the defendants' motion to dismiss. Instead, Meisner elected to file an amended complaint and amended motion for preliminary injunction, due on or before October 18, 2019.

28. Also during the October 3, 2019 pre-motion conference, the parties were ordered to contact the magistrate's chambers by October 4, 2019 to pursue settlement discussions, which were to take place prior to November 22, 2019.

29. On or about October 4, 2019, the defendants filed a letter to the magistrate in accordance with the October 3, 2019 order. Meisner did not.

30. On or about October 18, 2019, Meisner filed an amended complaint and amended motion for preliminary injunction. The amended complaint was rejected as Meisner neglected to sign the pleading.

31. On or about October 21, 2019, Meisner was ordered to re-file the amended complaint with the court's leave.

32. On or about October 22, 2019, upon the court granting Defendant Meisner's request for leave, Meisner re-filed the amended complaint.

33. On or about November 7, 2019, the defendants filed a motion to dismiss the complaint in lieu of an answer thereto.

34. On or about November 15, 2019, the court issued an order staying Mason's amended motion for preliminary injunction pending resolution of the defendants' motion to dismiss.

35. On or about December 6, 2019, Meisner and Catalina filed a memorandum of law in opposition to defendants' motion to dismiss.

36. On or about March 23, 2020, the court issued an order: (1) granting the defendants' motion to dismiss Counts I, II, III, and IV of Mason's amended complaint – including his misappropriation of trade secrets claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836; and (2) denying Mason's motion for a preliminary injunction. This left Mason with the sole remaining claim of breach of contract against AmTrust.[2]

37. Following the dismissal of Counts I through IV of the Amended Complaint filed in the Underlying Litigation, Mason's sole surviving cause of action was for breach of contract

---

[2] On or about April 6, 2020, Defendant Meisner filed a notice of appeal to the United States Court of Appeals for the Second Circuit from the March 23, 2020 opinion and order which ultimately affirmed the dismissal of Counts I, II, III and IV of the Amended Complaint filed in the Underlying Action by Order dated March 1, 2021.

whereby, Mason sought recovery of two (2) unpaid bonuses: the first was a bonus of over $1,000,000.00 based on 2018 Net Underwriting Income ("NUI"); the second was a bonus of over $77,000.00 in restricted stock that were discretionary bonus awards already earned from prior years but not paid by AmTrust to Mason.

38. On or about April 10, 2020, a pre-trial scheduling order was issued. The order required all fact discovery to be completed by August 28, 2020.

39. On or about April 16, 2020, AmTrust filed an answer to Mason's complaint.

40. Following the parties' inability to reach a consensus as to the appropriateness of the bonus payments by AmTrust to Mason, Defendant Meisner requested further information from AmTrust. On or about May 15, 2020, AmTrust filed a letter to the court providing that AmTrust was in the process of locating this material, and that AmTrust would be filing its Rule 26 Initial Disclosures.

41. Mason provided Defendants with documents and information in support of his breach of contract claim including but not limited to the names of at least two non-party fact witnesses and a financial report generated from AmTrust's Claims Management system from May of 2018 (the "May 2018 Monthly Management Report").

42. Defendants failed to obtain witness statements, declarations or deposition testimony from any of the non-party fact witnesses identified by Mason.

43. Upon information and belief, Defendants failed to timely exchange the May 2018 Monthly Management Report before the close of fact discovery.

44. The May 2018 Monthly Management Report later became a part of AmTrust's motion to preclude Mason's expert witness.

45. Mason further provided Defendants with information to assist Defendants in the efforts to obtain discovery from AmTrust.

46. Upon information and belief, in June 2020 Defendants served AmTrust with discovery demands including document requests and interrogatories seeking important documents which would aid in prosecution of Mason's breach of contract claim.

47. Defendants never obtained meaningful document discovery from AmTrust in response to the discovery demands served and despite raising the issue of AmTrust not complying with its discovery obligations on the record before the assigned Judge in the Underlying Action, Defendants did not timely move to compel the production of said discovery, instead Defendants made the ill-advised decision to grant AmTrust extensions of time to comply with discovery resulting in the fact discovery coming to a close without AmTrust ever producing the discovery which would have supported Mason's breach of contract claim.[3]

48. On or about July 24, 2020, in light of Defendant Meisner's failure to identify an expert to testify regarding the calculation of Mason's bonus payments, Mason independently solicited the services of Evan Bennett ("Bennett"), who had approximately 38 years of experience in financial accounting and reinsurance and had served as an expert witness and consultant in various litigation and arbitration proceedings. Bennett was not an actuary.

49. On or about August 7, 2020, a joint letter was filed to the court requesting modification of the Pre-Trial Scheduling Order dated April 10, 2020. Included amongst the requested modifications was an extension of fact discovery to September 30, 2020.

50. On or about August 10, 2020, the court declined to extend fact discovery, reiterating that the same was to be completed by August 28, 2020, as originally ordered. The August 10, 2020

---

[3] As noted below, Defendants' failure to obtain meaningful documentary evidence from AmTrust significantly impacted the effectiveness of Mason's expert witness and was a contributing factor the expert being precluded.

scheduling order further stated that Mason's expert report was due by September 18, 2020 and expert discovery was to close on October 30, 2020.

51. On or about August 14, 2020, upon interviewing Bennett and reviewing his resumé, Defendant Meisner agreed that Bennett was qualified and capable of serving as a reliable financial expert in the context of insurance and reinsurance financial accounting analysis.[4]

52. To perform his financial accounting analysis of Mason's bonus payments, Bennett required company reports, records, and documentation. As Defendants failed to obtain substantial documents in discovery from AmTrust, Bennett faced substantial limitations in performing his financial accounting and was forced to resort to utilizing unsupported and redacted data produced by AmTrust, resulting in qualified estimations rather than concrete calculations.

53. At no point in time, during discovery or otherwise, did Defendants conduct, or even request, the deposition of any witness from AmTrust.

54. At no point in time, during discovery or otherwise, did Defendants conduct, or even request, the deposition of any non-party fact witness identified by Mason.

55. At no point in time, during discovery or otherwise, did Defendants conduct, or even request, the deposition of AmTrust's designated expert witness.

56. Following the close of fact discovery, on or about September 11, 2020, AmTrust filed a motion for summary judgment seeking dismissal of any claims for damages in the form of NUI and discretionary bonuses that might have accrued more than six (6) months prior to the commencement of the Underlying Action.

57. On or about September 21, 2020, Defendant Meisner filed a joint letter to the court. As of the date of the said correspondence – nearly one (1) month after the close of fact discovery

---

[4] Defendant Meisner was aware at all relevant times that Bennett was not an actuary and that an actuarial expert was not required to calculate Mason's NUI bonus payment.

9

– AmTrust had yet to produce any discovery. Rather than moving to compel the outstanding discovery, Defendant Meisner stipulated to again extend discovery to September 25, 2020. In acknowledgment of the fact that Meisner lacked any discovery, the joint letter requested an extension of time for Mason to file an opposition to AmTrust's motion for summary judgment to October 16, 2020.

58. On or about September 21, 2020, the court issued an order denying the request to extend the dates for the summary judgment motion and reaffirming that the Joint Pre-Trial Order remained due on November 20, 2020.

59. On or about September 29, 2020, Defendant Meisner filed a memorandum of law in opposition to AmTrust's motion for summary judgment. AmTrust filed a reply memorandum of law in further support of its motion for summary judgment on or about October 2, 2020.

60. On or about October 5, 2020 – nearly two (2) months past the conclusion of fact discovery and more than two (2) weeks after Mason's expert report was due – apart from a brief one (1)-page spreadsheet from AmTrust lacking back-up data, loss runs, net versus gross figures, impact of reinsurance, and actuarial assumptions, Defendant Meisner still had yet to receive any discovery from AmTrust. Indeed, AmTrust had not disclosed Mason's personnel file, its company handbook, and/or any accounting or actuarial information. As a result of the foregoing, on or about October 5, 2020, Defendant Meisner filed a discovery deficiency letter to the court and requested a discovery conference.

61. On or about October 6, 2020, AmTrust filed a letter in response to Meisner's October 5, 2020 deficiency letter, alleging that they had been given less than one (1) business day to procure responsive documentation and had not yet had an opportunity to meet and confer in good faith with Defendant Meisner.

62. On or about October 6, 2020, the court issued an order scheduling a teleconference for October 8, 2020 and reminding that expert discovery was to conclude on October 30, 2020.

63. On or about October 8, 2020, a teleconference was held during which Defendant Meisner erroneously informed the court that an accounting actuarial expert was required to calculate Mason's bonus payments and review financial information in actuarial assumptions. Meisner was aware at all relevant times that the calculation of Mason's NUI bonus payment did not require an actuary.

64. During the October 8, 2020 teleconference, the court declined to intervene in compelling AmTrust's responses to Mason's discovery demands as Defendant Meisner had failed to diligently and timely raise the issues with the court.[5]

65. On or about October 8, 2020, and at all relevant times, Defendant Meisner was aware that the limited discovery provided by AmTrust to date was inaccurate and erroneous, and perhaps intentionally so.[6]

66. With the close of expert discovery fast approaching, on or about October 21, 2020, Defendant Meisner filed another letter to the court in which he inexplicably agreed to waive all discovery deficiencies and other discovery related issues in exchange for one, single document: a purported "Monthly Management Report" for the month of December 2018 and submitted to senior management in January 2019 by Paul Poppish, former Vice President of Claims at AmTrust ("Poppish").

---

[5] At the October 8th Conference the Court reprimanded Meisner, specifically stating, "Mr. Meisner, the bottom line was if this is important to you for your expert the burden was on you to be sufficiently diligent to raise the question in a timely way with me."

[6] In response to the Court's rebuke, Meisner admitted, on the record, that he had made a mistake in his handling of the matter when he stated, "we gave Amtrust extensions to provide us discovery. I guess I shouldn't have done that but I did…So, I am not asking you to extend anything yet but I do want the Court to understand that there is a problem because I don't have what I need for my expert."

11

67. As noted above, Mason maintained possession of a May 2018 Monthly Management Report which was not produced as part of fact discovery to AmTrust.

68. On or about October 21, 2020, Bennett still had little documentation or records to perform his financial accounting analysis to calculate Mason's NUI bonus payments. Notwithstanding the lack of documentary evidence, by utilizing partial year data as provided in the May 2018 Monthly Management Report, as well as reinsurance impact analysis of a list of large losses paid, Bennett had determined that Mason was entitled to a profit-based bonus of approximately $1,200,000.00 to $2,100,000.00.[7]

69. In response to Defendant Meisner's October 21, 2020 letter, the court ordered the parties to promptly meet and confer on or about October 21, 2020.

70. On or about October 22, 2020, AmTrust filed a letter in response to Defendant Meisner's October 21, 2020 letter, providing that AmTrust had produced the requested spreadsheet to Defendant Meisner on or about October 22, 2020.

71. Contrary to the claims asserted in AmTrust's October 22, 2020 letter, AmTrust did not produce the requested Monthly Management Reports created in the ordinary course of business. Rather, Mason received a newly fabricated and redacted version of the document.

72. On or about October 23, 2020, Defendant Meisner filed a letter to the court regarding AmTrust's deficient response. In the said letter, Meisner: (1) withdrew his motion to extend the discovery period; (2) moved to compel AmTrust's production of the legitimate Monthly Management Reports on or before October 26, 2020; and (3) requested that the court accept a report from Bennett with a real-time bonus calculation date of May 30, 2018 as the December 2018 Monthly Management Report was either lost, spoliated, or being withheld by AmTrust.

---

[7] The May 2018 Monthly Management Report included financial information exclusive to Mason's business unit from the inception of the business through May of 2018.

73. On or about October 23, 2020, the court denied all of the requests set forth in Defendant Meisner's October 23, 2020 letter and ordered the parties to meet and confer.

74. On or about October 29, 2020, the court issued an opinion and order granting AmTrust's motion for summary judgment and dismissing Mason's claims concerning his bonus payments for the years 2014 through 2017. Resultantly, the only remaining claim was breach of contract for Mason's 2018 bonus payments.

75. On or about October 30, 2020, the scheduled close of expert discovery and over one (1) month past the September 18, 2020 deadline, Defendant Meisner served Bennett's expert report to AmTrust. The expert report relied upon material that had not previously been disclosed by Meisner in the discovery process (i.e. the May 2018 Monthly Management Report).

76. On or about November 11, 2020, against Defendant Meisner's objection, the court ordered Bennett to submit to a deposition on November 13, 2020. Meisner neglected to properly prepare Bennett for his deposition.

77. On or about November 20, 2020, a proposed Joint Pre-Trial Order was submitted to the court on behalf of the parties.

78. On or about November 20, 2020, Mason disclosed three (3) witnesses to be produced at trial, including Poppish, who would testify regarding the existence and upkeep of the Monthly Management Report and its distribution to Mason and other AmTrust managers. Furthermore, Poppish would testify that the report included critical information, including, but not limited to, total incurred losses, reserve information, and subrogation information for all open and paid claims from the inception of Mason's start-up business to the date that Poppish ended his employment at AmTrust. The foregoing information would have facilitated Bennett's calculation of Mason's NUI bonus for 2018.

79. On or about November 20, 2020, AmTrust filed, *inter alia*, a motion *in limine* to exclude the expert testimony of Bennett.

80. On or about November 24, 2020, a bench trial of the Underlying Action was scheduled to occur on January 6, 2021.

81. On or about December 18, 2020, the court granted AmTrust's motion to exclude the expert testimony of Bennett, based in large part upon the incorrect premise propounded by Defendant Meisner that an actuary was required to calculate Mason's bonus payments and, as Bennett was not an actuary, he was therefore unqualified to perform the bonus calculation.

82. On or about December 21, 2020, AmTrust filed a letter to the court providing notice of its request to move for judgment on partial findings.

83. On or about December 22, 2020, a pre-trial telephone conference was held, during which Defendant Meisner conceded that, apart from the limited proffered testimony of Poppish, he had no evidence to present at trial regarding the calculation of Mason's bonus payments.

84. On or about December 28, 2020, the court issued an order cancelling the trial of the Underlying Action.

85. On or about March 1, 2021, the United States Court of Appeals for the Second Circuit issued a summary order and judgment, affirming the judgment of the Southern District of New York.

86. On or about March 23, 2021, the United States Court of Appeals for the Second Circuit issued a formal mandate notifying the Southern District of New York of its decision affirming the district court's judgment.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Legal Malpractice)

87. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "86" with the same force and effect as if fully set forth at length herein.

88. Rule 1.1 of the New York Rules of Professional Conduct requires Competence, the rule states as follows: (a) A lawyer should provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. (b) A lawyer shall not handle a legal matter that the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it. (c) lawyer shall not intentionally: (1) fail to seek the objectives of the client through reasonably available means permitted by law and these Rules; or (2) prejudice or damage the client during the course of the representation except as permitted or required by these Rules.

89. Rule 1.3 of the New York Rules of Professional Conduct requires Diligence, the rule states as follows: (a) A lawyer shall act with reasonable diligence and promptness in representing a client. (b) A lawyer shall not neglect a legal matter entrusted to the lawyer. (c) A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services, but the lawyer may withdraw as permitted under these Rules.

90. Defendant Meisner is a partner and principal of Jardin Meisner who practices law and represented Plaintiff in the Underlying Action.

91. Defendant Catalina is a partner of Jardin Meisner who practices law and represented Plaintiff in the Underlying Action.

92. Under the New York Rules of Professional Conduct, the Defendants had a duty to competently and diligently represent Mason in the Underlying Action.

93. Furthermore, Defendants, and each of them, had a duty to use such skill, prudence,

diligence, and knowledge as members of the legal profession commonly possess and exercise, in providing legal services to Plaintiff herein.

94. The conduct of Defendants, and each of them, in doing the acts and omissions herein alleged directly resulted in damages and harm to Plaintiff as set forth herein.

95. Defendants, and each of them, failed to exercise the degree of care, skill, diligence, and knowledge commonly exercised by a reasonable lawyer under the circumstances, and failed to follows standards of acceptable practice, for, *inter alia*:

   a. failing to move to compel outstanding discovery responses;

   b. negligently and unreasonably repeatedly extending deadlines outside scheduling order for AmTrust's discovery responses;

   c. failing to move for sanctions for the spoliation of critical evidence;

   d. failing to adhere to scheduling orders;

   e. negligently allowing deadlines to pass without compliance therewith;

   f. negligently mischaracterizing the mechanism by which Plaintiff's bonus payments should be calculated;

   g. negligently mischaracterizing the nature and substance of the testimony of Plaintiff's proffered expert witness;

   h. failing to correct a false statement of material fact made to a tribunal;

   i. failing to prepare a witness for deposition;

   j. intentionally and/or negligently delaying and/or prolonging the Underlying Action, thereby causing Plaintiff needless expense;

   k. failing to exercise ordinary prudence in the performance of their duties as attorneys for Plaintiff; and

        l.      failing to act with the high degree of undivided loyalty to Plaintiff.

96. As a result, Defendants violated a number of the New York Rules of Professional Conduct, including, but not limited to, Rules 1.1, 1.3, 1.4, 1.5, 1.16, 2.1, 3.2, 3.3, 3.4, 4.1, 5.1, and 8.4.

97. As a direct and proximate result of Defendants' poor performance, advice, and representations, Plaintiff has been damaged as a result of attorneys' fees and costs incurred in connection with the Underlying Action.

98. But for Defendants' legal malpractice, Plaintiff's trial of the Underlying Action would not have been cancelled and Plaintiff would have received an award of the bonus payments due and owing to him.

99. As a direct and proximate result of the aforesaid negligence and/or intentional failures of Defendants, Plaintiff has been harmed and damaged in an amount not presently ascertainable, but believed to exceed $3 million.

100. As a further direct and proximate result of the negligence of Defendants, and each of them, Plaintiff has sustained damages, including, but not limited to, legal fees paid to Defendants according to proof at trial and payment of fees and costs. Plaintiff has sustained further and additional damages as a direct result of Defendants' negligence, all in an amount according to proof at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants on all causes of action, in a sum exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction, but in no event less than Three-Million Dollars ($3,000,000.00), together with Plaintiff's reasonable attorneys' fees, costs and disbursements, including interest, incurred in connection with the prosecution of this action, and for such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Mason demands that his claims be tried before a jury of his peers.

Dated: New York, New York
June 21, 2024

By:    */s/ Jason A. Stewart*
Jason A. Stewart
The Law Offices of Neal Brickman, P.C.
Attorneys for Plaintiff
420 Lexington Avenue, Suite 2811
New York, New York 10170
(212) 986-6840

## VERIFICATION

STATE OF CONNECTICUT    )
                        ) ss.:
COUNTY OF FAIRFIELD     )

EUGENE F. MASON, JR., being duly sworn, deposes and says, I am the Plaintiff in the within action. I have read the foregoing Amended Complaint and am familiar with the contents thereof. The same are true to my knowledge, except as to those matters therein which are stated to be alleged upon information and belief, and, as to those matters, I believe them to be true. The grounds of my belief as to all matters not stated upon my own knowledge are from information obtained through my records and conversations.

EUGENE F. MASON, JR.

STATE OF CONNECTICUT    )
                        ) ss.: Newtown
COUNTY OF Fairfield     )

On this 21 day of June, 2024, before me, the undersigned, personally appeared EUGENE F. MASON, JR., personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of whom the individual acted, executed the instrument.

NOTARY PUBLIC

LAURA S. COLE
*NOTARY PUBLIC*
My Commission Expires Mar. 31, 2028